418 So.2d 311 (1982)
Celia PINO, Appellant,
v.
Jorge E. PINO, Appellee.
No. 81-2489.
District Court of Appeal of Florida, Third District.
July 27, 1982.
Rehearing Denied September 15, 1982.
George C. Vogelsang, Miami, for appellant.
Barranco & Kellough, Steven Kellough and Peter H. Kircher, Miami, for appellee.
Before SCHWARTZ, DANIEL S. PEARSON and FERGUSON, JJ.
SCHWARTZ, Judge.
We agree with both of Ms. Pino's claims of error in the final judgment of dissolution entered below.
First, we conclude that the trial court abused its discretion in permitting the ex-wife and the parties' two children, a boy, eleven, and a girl, nine, to reside in the marital home, which is held by the entireties, for only one year following the judgment, after which it was to be sold with the proceeds equally divided. One of the reasons for this ruling was that the parties purportedly now "could not afford" to maintain the relatively luxurious four-bedroom home, which had been purchased in 1976, and in which the family had lived since then. Upon analysis in the light of economic reality, this ground provides no foundation for the determination below. The required payments, including taxes and insurance, on the outstanding mortgages on the home  which has a value of $120,000 and a net equity of approximately $56,300  are $710 per month. Since even appellate judges know what everyone else does, we take notice that, in the existing market, any accommodations which would be even remotely suitable for Ms. Pino and, more importantly, the children, would cost as much if not more than that  even though that *312 amount would obviously not secure a place to live equivalent to their present one.[1] The effect of the vast increase in the value of real estate and interest rates since 1976 thus entirely vitiates this avowed purpose of the order under review. It is, in a phrase, both penny-foolish and pound-foolish to force the Pino family to reside in inferior housing when little or no saving of dollars will be accomplished by the move.
It is also argued that selling the house would permit the husband to liquidate some $26,500 in outstanding debts. Indulging his desire to pay off these obligations,[2] however, cannot serve to justify the requirement that his children be uprooted from the home in which they have lived for almost all of their lives. Smith v. Smith, 378 So.2d 11, 17 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1118 (Fla. 1980). The breakup of their parents' marriage is of course itself a severe trauma to young children; this additional physical and psychological dislocation should not be imposed upon them unless there is a very good reason indeed for doing so. Since no such reason appears from this record, we order that Ms. Pino and the children be granted the right to occupy the home until she remarries or the younger child reaches majority. Kuvin v. Kuvin, 412 So.2d 900, 902 (Fla. 3d DCA 1982), and cases cited; Kemmerer v. Kemmerer, 386 So.2d 1248 (Fla. 3d DCA 1980), review denied, 392 So.2d 1376 (Fla. 1981), and cases cited.[3]
The trial court was mistaken also in refusing to require the husband to pay any portion of the wife's attorney's fees. The record shows not only that, by virtue of his income, Mr. Pino's financial position is superior to hers, see Locke v. Locke, 413 So.2d 431, 432 (Fla. 3d DCA 1982); Hudgens v. Hudgens, 411 So.2d 354 (Fla. 2d DCA 1982), but, of perhaps greater significance, that the bulk of her lawyer's efforts were expended in defense of a claim by Mr. Pino for custody of the children which he abandoned only on the very eve of trial. See Jaffee v. Jaffee, 394 So.2d 443, 447-48 (Fla. 3d DCA 1981). In these circumstances, the failure to award the wife a reasonable sum for attorney's fees must be reversed, Neumann v. Neumann, 413 So.2d 1203 (Fla. 3d DCA 1982); Locke v. Locke, supra; Hudgens v. Hudgens, supra; Jaffee v. Jaffee, supra, and the trial court is therefore directed to determine and award that amount after remand.
While the judgment is otherwise affirmed, in the respects outlined it is reversed and vacated and the cause is remanded for proceedings consistent herewith.
Affirmed in part, reversed and vacated in part and remanded.
NOTES
[1] Nor can we conclude that the $710 figure for housing is out of line with the financial circumstances of the parties. Mr. Pino earns $36,500 a year as an Eastern Airlines executive, and Ms. Pino has a demonstrated earning capacity of at least $17,500 per year.
[2] The husband did not demonstrate that there was even an economic necessity for the immediate discharge of these debts. Several, including an automobile loan, are payable in installments, and another large sum is owed to his attorneys for this litigation.
[3] We leave intact the provision that Mr. Pino pay as rehabilitative alimony the full amount of the home mortgage payments for one year after the judgment, or until October, 1982. The effect of our decision concerning the home, however, is that after that date the parties, as tenants in common, are each liable for one-half of those amounts. Since the award of exclusive possession under these circumstances effectively results in an increase in the father's child support obligations, see Pujals v. Pujals, 414 So.2d 228 (Fla. 3d DCA 1982), the trial court upon remand may, in its discretion, reconsider the support award now provided in the judgment in the light of this additional requirement. See Winner v. Winner, 370 So.2d 845 (Fla. 3d DCA 1979).